IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BABETTE OLIVERI, | ) | |
| | ) | |
| Plaintiff, | ) | 2:21-cv-1772 |
| | ) | |
| v. | ) | |
| | ) | Judge Marilyn J. Horan |
| RIVERSIDE CARE CENTER and | ) | |
| GRANE HEALTHCARE CO., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Presently before the Court is a Motion for Summary Judgment filed by Defendants, Riverside Care Center and Grane Healthcare Co. (Riverside). (ECF No. 27). Plaintiff, Babette Oliveri, filed a Complaint alleging claims of retaliation under Title VII of the Civil Rights Act of 1964 and under the Pennsylvania Human Relations Act (PHRA). (ECF No. 1). Discovery has been completed, and the Defendants have filed a Motion for Summary Judgment. (ECF No. 27). The present Motion for Summary Judgment has been fully briefed, and the Motion is now ripe for decision. (ECF Nos. 27-32). Based on the following reasons, Defendants' Motion for Summary Judgment will be granted.

**I.      Statement of Facts**

Riverside is a skilled nursing facility in McKeesport, Pennsylvania. (ECF Nos. 30, ¶ 3; 31-5, ¶ 3). In January 2019, Ms. Oliveri was hired by Riverside as an Assistant Director of Nursing. (ECF Nos. 30, ¶ 1; 31-5, ¶ 1). Riverside promoted Ms. Oliveri to its Director of Nursing position in March 2019, and she served in this role until her termination on November 11, 2020. (ECF Nos. 30, ¶¶ 2, 28; 31-5, ¶¶ 2, 28). Included within the essential functions of Ms. Oliveri's Director of Nursing position was her responsibility to assist in the planning and

1

implementation of the nursing services budget and to operate the nursing services within budget guidelines. (ECF Nos. 30, ¶ 4; 31-5, ¶ 4).

Ms. Oliveri reported to Carl Kovski, Riverside's Administrator, who was responsible for Riverside's hiring, firing, and disciplinary decisions. (ECF Nos. 30, ¶¶ 6-7; 31-5, ¶¶ 6-7). Ms. Oliveri and Mr. Kovski had daily discussions on issues related to staffing at Riverside. (ECF Nos. 30, ¶ 8; 31-5, ¶ 8). On July 10, 2020, Mark Fox, liaison between Riverside and its Board of Directors, sent an email to Mr. Kovski expressing his concerns that Riverside's usage of a staffing agency at 30% was too high. (ECF Nos. 29-5, at 1; 30, ¶ 13; 31-5, ¶ 13).

Mr. Kovski testified that he decided to terminate Ms. Oliveri's employment in mid-July 2020, because of his concerns over her inefficient implementation of the operating budget. (ECF Nos. 30, ¶¶ 15, 30; 31-5, ¶¶ 15, 30). Mr. Kovski further testified that he also started to seek a replacement for her in mid-July 2020. (ECF Nos. 30, ¶ 18; 31-5, ¶ 18). In mid-July 2020, Mr. Kovski reached out to Monica McWilson to inquire about her serving as Riverside's Director of Nursing. (ECF Nos. 30, ¶ 20; 31-5, ¶ 20). On October 9, 2020, Mr. Kovski formally offered Ms. McWilson the position as Riverside's Director of Nursing. (ECF Nos. 30, ¶ 22; 31-5, ¶ 22). On October 13, 2020, Ms. McWilson accepted the Riverside Director of Nursing employment offer, and she notified her then employer as to her resignation, effective November 13, 2020. (ECF Nos. 29-11; 30, ¶ 23; 31-5, ¶ 23). In an October 13, 2020 text message exchange between Mr. Kovski and Ms. McWilson, they agreed that Ms. McWilson would begin her new position at Riverside on November 16, 2020. (ECF No. 29-11, at 5-6).

During the overnight hours of October 21-22, 2020, a male housekeeping employee at Riverside sexually assaulted a female employee at work. (ECF Nos. 29-12, at 1; 30, ¶ 24; 31-5, ¶ 24). On October 22, 2020, Ms. Oliveri was notified of the incident, and she then reported the

2

incident to the police.  (ECF Nos. 30, ¶¶ 25-26; 31-5, ¶¶ 25-26).  Riverside suspended the male employee on October 22, 2020, pending an investigation, and the male employee was terminated on November 10, 2020.  (ECF Nos. 30, ¶¶ 27-28; 31-5, ¶¶ 27-28).

On November 11, 2020, Riverside terminated Ms. Oliveri's employment.  (ECF Nos. 30, ¶ 28; 31-5, ¶ 28).  Mr. Kovski told that Ms. Oliveri that termination was related to performance issues, including her excessive use of costly staffing agencies.  (ECF Nos. 30, ¶ 30; 31-5, ¶ 30; 29-2, at 13).

## II. Relevant Legal Standards

According to Federal Rule of Civil Procedure 56, a court must grant summary judgment where the moving party "shows that there is no genuine dispute as to any material fact" and the moving party "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  For a dispute to be genuine, there must be "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party."  *Moody v. Atl. City Bd. of Educ.*, 870 F.3d 206, 213 (3d Cir. 2017) (internal quotations omitted).  Additionally, for a factual dispute to be material, it must have an effect on the outcome of the suit.  *Id.*  In reviewing and evaluating the evidence to rule upon a motion for summary judgment, the court must "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the" non-moving party.  *Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 265 (3d Cir. 2014) (internal quotations omitted).  However, where "the non-moving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,'" the moving party is entitled to judgment as a matter of law.  *Moody*, 870 F.3d at 213 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

"The movant has the burden of showing that there is no genuine issue of fact, but the plaintiff is not thereby relieved of his own burden of producing in turn evidence that would support a jury verdict." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "Discredited testimony is not normally considered a sufficient basis for drawing a contrary conclusion. Instead, the plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Id.* at 256-57 (internal citation omitted). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted). Judges are not "required to submit a question to a jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence be of such a character that it would warrant the jury in finding a verdict in favor of the party." *Id.* at 251 (internal citation omitted).

### III.  Discussion

Defendants argue that Riverside had made the decision to terminate Ms. Oliveri and had hired her replacement before the alleged protected activity. (ECF No. 28, at 4). Ms. Oliveri argues that she was fired because she reported the sexual assault that occurred at Riverside. (ECF No. 31-6, at 5-6).

Title VII prohibits discrimination against any individual "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C § 2000e-2(a)(1). Title VII also prohibits an employer from discriminating against an employee who has opposed an employer's discriminatory conduct or "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" related to an employer's discriminatory conduct. 42 U.S.C. § 2000e-3(a). The Third Circuit interprets the PHRA's retaliation provisions in the same

4

manner it interprets Title VII's retaliation provisions. *Hussein v. UPMC Mercy Hosp.*, 466 F. App'x 108, 112 (3d Cir. 2006).

"The procedural framework in Title VII retaliation cases provides for the burden shifting established by the landmark U.S. Supreme Court case *McDonnell Douglass*." *Moore v. City of Phila.*, 461 F.3d 331, 342 (3d Cir. 2006). Under this framework, the plaintiff must first establish a prima facie case of retaliation. *Young v. City of Phila. Police Dep't*, 651 F. App'x 90, 95 (3d Cir. 2016). To establish a prima facie case for Title VII retaliation, a plaintiff must show that (1) she engaged in conduct protected by Title VII; (2) her employer took adverse action against her; and (3) a causal link existed between her protected conduct and the employer's adverse action. *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016).

In this case, Defendants do not challenge the first two elements of Ms. Oliveri's prima facie case. Instead, Defendants argue that Ms. Oliveri cannot satisfy the causation element of her prima facie case. As such, Defendants argue that they are entitled to judgment in their favor. Ms. Oliveri argues that she is able to prove causation by connecting her reporting of the sexual assault to her termination on November 11, 2020.

Mr. Kovski testified that he made the decision to terminate Ms. Oliveri's employment in mid-July 2020 because of her over-use of employment agency workers. The record evidence shows that, in mid-July 2020, upon making the decision to terminate Ms. Oliveri, Mr. Kovski contacted Ms. McWilson in mid-July 2020 to assess her interest in the Riverside Director of Nursing position. The record evidence also shows that, between mid-July 2020 until October 9, 2020, Mr. Kovski and Ms. McWilson spoke several times and exchanged multiple text messages about the Director of Nursing position. On October 9, 2020, Mr. Kovski formally offered the Director of Nursing position to Ms. McWilson. Ms. McWilson's October 9, 2020 offer letter

included information about her starting salary, benefits package, and paid time off. On October 13, 2020, Ms. McWilson resigned from her former position, effective November 13, 2020, and she accepted the Director of Nursing position at Riverside, setting her start date for November 16, 2020.

The protected activity at issue here is Ms. Oliveri's October 22, 2020 police report of a sexual assault involving two Riverside employees during the overnight shift of October 21-22, 2020. Ms. Oliveri claims that her November 11, 2020 termination was in retaliation for her having made such report. However, there is no question of material fact, and the record clearly establishes that Riverside had already decided to terminate her and that it had already hired her replacement as of October 13, 2020. As such, Ms. Oliveri's claim for retaliation fails because she cannot establish any causal connection between her alleged protected activity and Riverside's decision to terminate her.

In a similar case, the United States District Court for the District of Delaware found that a plaintiff could not meet the causation requirements of her prima facie case where the record evidence showed that her employer made its decision to fire the plaintiff before she filed any internal complaint. *Pantoja v. Brennan*¸ 257 F. Supp. 3d 636, 643 (D. Del. 2017). The reasoning from *Pantoja* applies to the facts in this Court and supports the Court's conclusion that Ms. Oliveri fails to satisfy her burden of proof as to causation. As such, Defendants Motion for Summary Judgment will be granted as to Ms. Oliveri's Title VII and PHRA Retaliation claims.

### IV.     Conclusion

Based on the foregoing, Defendants' Motion for Summary Judgment will be granted. Judgment will be entered in favor of the Defendants as to all claims and counts in the Complaint.

Accordingly, an appropriate Order shall be entered.

DATE: April 3, 2023

Marilyn J. Horan
United States District Judge